Nelda F. DAVIS, M. Weldon Davis, and Wanda Trammel, Appellants,

v.

SULTAN OIL COMPANY, The Marietta Royalty Company, Gaylia June Hartman, John. E. Hartman, John H. Hartman, Vivien L. Hartman Carlisle, George C. Hartman, Rosanna F. Hartman, John L. Stuart, Charles Wayne Ellinger, Ralph Franklin Ellinger, Ralph A. Johnston, Ralph A. Johnston Foundation, Inc., Stewart L. Killam, Dorothy Marian Kidd, Sam L. Wilhite, Sam L. Wilhite, Trustee under Declaration of Trust dated March 10, 1977, The Liberty National Bank and Trust Company of Oklahoma City, Trustee of the Irish Lee Castro 1981 Irrevocable Trust under Agreement dated June 9, 1991, The Liberty National Bank and Trust Company of Oklahoma City, Trustee of the Sean Michael Mills 1981 Irrevocable Trust under Agreement dated June 9, 1991, The Liberty National Bank and Trust Company of Oklahoma City, Trustee of the Karol Kidd Castro 1981 Irrevocable Trust under Agreement dated June 9, 1991, Dorothy Marian Kidd, Trustee of the Dorothy Marian Kidd 1981 Irrevocable Trust, Thomas N. Berry & Company, Tom D. Berry, Luke L. Nigliazzo, Jr., Trustee of the J. H. Arrington Family Trust, Luke L. Nigliazzo, Jr., Trustee of the Veneta Berry Arrington Revocable Trust, the United States of America—Department of Treasury—Internal Revenue Service, Federal Deposit Insurance Corporation, as Receiver for Penn Square Bank, N.A., and if any named person is deceased, then the known or unknown heirs, executors, administrators, devisees, trustees, and assigns, both immediate and remote, of any such deceased person[s], Appellees.

No. 81204.

Court of Appeals of Oklahoma.

June 21, 1994.

Certiorari Denied Sept. 14, 1994.

David T. Cook, Oklahoma City, for appellants.

Linda R. Driskill, Oklahoma City, for appellees.

## MEMORANDUM OPINION

JONES, Presiding Judge:

In this case we must decide whether the trial court correctly granted summary judgment against Appellants in their quest to quiet title to certain mineral interests. We hold it did not.

The facts are recited here only so far as they bear on the present controversy: Robert Schmidt acquired title to two quarter-sections by patent deeds from the United States in 1910 and from the state Commissioners of the Land Office in 1925. He later conveyed half of the mineral interest on both parcels (together comprising the northern half ["N/2"] of the section) to J.W. Sharp in 1927. In 1930, Marietta Royalty Company, an Ohio corporation, purchased a ⅜ mineral interest in the N/2; and in 1938 Cy Ellinger bought a ¹⁄₁₆ mineral interest. Robert died intestate in 1937, survived by his wife, Meta, and son, John.

In 1939, the county initiated tax resale proceedings because ad valorem taxes had not been paid on the property. John purchased the property from the county treasurer, and obtained a resale deed in January, 1940. In the two succeeding years, apparently to assure that title lay in only one person, John first conveyed his interest to Meta, and then reacquired the property from her.

In 1947, John Schmidt commenced a quiet title action against various defendants, including Appellees' predecessors in interest. Schmidt's attorney filed affidavits in support of service by publication on certain defendants, including Appellees' predecessors, which averred that neither Schmidt nor his attorney knew how to serve those parties other than by publication.[1] The trial court appointed counsel to represent the parties to

---

1. Following the language of the statute then in force, Schmidt's attorney averred that the defendants' addresses were not known and could not be ascertained by any means within Schmidt's control. *See* 12 O.S.1941 § 172.

be served by publication. Schmidt procured publication of notice of the action and filed the publisher's affidavit. The trial court granted judgment in favor of Schmidt, which recited in part:

"The court further finds that each and all of the remaining defendants in this action have been duly and legally notified of the pendency of this action by notice by publication as required by law; and the court having examined the affidavit to obtain service by publication, the notice and the proof of publication on file herein, and the affidavit of non-mailing, finds and adjudges that said service by publication is in due and proper form as required by law, and that the same is in all respects sufficient, valid and binding and gives this court jurisdiction of the said defendants."

In 1992, Appellants, successors to John Schmidt, commenced the present action, again seeking to quiet title against Appellees, who claimed some interest in the minerals underlying the subject property, either through the chain of title from J.W. Sharp, or through leases executed by those claiming under him. Appellants filed a motion for summary judgment, asserting the efficacy and preclusive effect of the 1947 quiet title judgment. The trial court, however, granted judgment in favor of Appellees.[2]

■ On appeal, Appellants contend the trial court improperly relied on extrinsic evidence to collaterally attack the 1947 judgment, and the trial court should have given the 1947 judgment preclusive effect.[3] Appellees dispute those contentions, and also argue that once John Schmidt acquired fee simple title to the property, whether by means of his purchase from the county treasurer in the tax resale proceedings or by the 1947 quiet title judgment, their predecessors' mineral interest should have been "re-vested" by operation of the doctrines of estoppel by deed or after-acquired title, and, so, should have

been impervious to the Appellants' quiet title action in 1992.

There is perhaps no more difficult doctrine for this court to consider than after-acquired title or estoppel by deed, the central concept of which centuries ago was described as an "excellent and curious kinde of learning." Coke on Littleton (1 Inst.) 352a (1628), as quoted in Note, *Conveyances: After–Acquired Title and Its Effect Upon Lineal and Collateral Descendents*, 13 Okla.L.Rev. 51, 52 (1960). In the present case, however, we find it unnecessary to plumb the depths of the doctrine, because any claims to the property by Sharp's successors were extinguished by the 1947 judgment.

■ There are three jurisdictional prerequisites to a valid judgment: (1) subject matter jurisdiction, (2) personal jurisdiction, and (3) jurisdiction to render the particular judgment. *Abraham v. Homer*, 102 Okla. 12, 226 P. 45, 47 (1924). A judgment which was not challenged on appeal may be questioned in a collateral action, but the court's inquiry in the latter proceeding cannot extend beyond an examination of the judgment roll to determine whether those jurisdictional elements are present. *Mayhue v. Mayhue*, 706 P.2d 890, 895 (Okla.1985); *see Barton v. Alpine Investments, Inc.*, 596 P.2d 532, 534 (Okla.1979). Unless a jurisdictional defect appears on the face of the record, the court is without authority to question the judgment. *Bomford v. Socony Mobil Oil Co.*, 440 P.2d 713, 720 (Okla.1968); *Crockett v. Prudential Insurance Co.*, 789 P.2d 1, 2 (Okla.Ct.App. 1990).

■ Appellees have raised three grounds for attacking the 1947 quiet title judgment. First, they contend that John Schmidt had no proper title to the half-section because of defects in the tax resale proceedings, and thus could not bring a quiet title action in 1947. Second, Appellees argue Schmidt's petition in the quiet title action stated only

---

**2.** Rule 13(e), Rules for District Courts, 12 O.S. 1993 Supp., Ch. 2, App., allows the trial court to render judgment for any party entitled to judgment as a matter of law, even if that party is not the moving party.

**3.** Appellant's petition in error also raised a "shotgun" allegation of error "in quieting title in the Appellees," which was insufficient to preserve any error for appellate review. Rule 1.16, Rules of Appellate Procedure, 12 O.S.1991, Ch. 15, App. 2; *see Silverstein v. Silverstein*, 748 P.2d 1004, 1007 (Okla.Ct.App.1987).

legal conclusions, and was legally insufficient to tender the issue of title. Finally, they challenge publication service in the quiet title action.

We have examined the record from the 1947 case, which was provided to the trial court as an exhibit, and we find no such infirmities as alleged by Appellees. Questions of the sufficiency of the allegations in 1947 are controlled by the law and interpretation then extant. *Crain v. Farmers United Cooperative Pool*, 472 P.2d 882, 883–84 (Okla.1970). John Schmidt asserted legal and equitable title in his petition. Those assertions were legally sufficient according to the statutes and case law prevailing in 1947. *See* 12 O.S.1941 § 1141; *Piland v. Craig*, 194 Okla. 666, 154 P.2d 583, 585 (1945). The journal entry of judgment specifically recited that the court had reviewed the filings in support of publication service, and found such service to be "in all respects sufficient, valid and binding." The trial court in the present case could not consider any extrinsic evidence offered to suggest that the recitals made in those filings were incorrect. *Wootten v. Askew*, 668 P.2d 1123, 1125–26 (Okla. 1983).

In the absence of a jurisdictional infirmity appearing on the face of the judgment roll, the 1947 judgment must be enforced according to its unequivocal terms. The trial court's judgment is reversed and the case is remanded with instructions to enter judgment for Appellants.

REVERSED AND REMANDED WITH INSTRUCTIONS.

HANSEN and ADAMS, JJ., concur.